**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SYNERGY MARINE PRIVATE LTD., *et al.* | Case No. 26-CR-00118-JKB |

**RESPONSE IN SUPPORT OF THE CREW PETITIONERS' MOTION FOR AN
ORDER DIRECTING THE PARTIES TO DEPOSE THE PETITIONERS
PURSUANT TO FED. R. CRIM. P. 15 AND FOR THE DISCHARGE OF
PETITIONERS FOLLOWING COMPLETION OF THE DEPOSITIONS**

Defendants Synergy Marine Private Ltd. ("Synergy Marine") and Synergy Maritime Private Ltd. ("Synergy Maritime") (collectively, the "Synergy Defendants") submit this Response in Support of the Crew Petitioners' Motion for an Order Directing the Parties to Depose the Petitioners Pursuant to Fed. R. Crim. P. 15 and for the Discharge of Petitioners Following Completion of the Depositions (the "Motion"). The three Crew Petitioners are not United States citizens, and they do not reside in the United States. The Crew Petitioners have not been charged with a crime, yet have been in the United States for *over two years* under the terms of an agreement required by the Government to which they were not a party.  Without the relief requested in the Motion, the Crew Petitioners will continue to languish in Baltimore until the trial in this matter, which is currently set for October 2027—nearly  another year and a half.  For these reasons, and as explained more fully below, the Synergy Defendants respectfully submit this Response in Support of the Motion.

**PRELIMINARY STATEMENT**

The Synergy Defendants respectfully request that the Court grant the Motion and order the Rule 15 depositions of the three Crew Petitioners: Stephen Fernando Kwinteen Jayakumar, Rohit

Singh Bisht, and Charles Vaz.  Each of the Crew Petitioners surrendered his passport in June 2024 and has been effectively detained in the United States, thousands of miles from home, since that time.  Following the surrender of their travel documents, the Crew Petitioners have been required to reside at a hotel in Baltimore, Maryland, and are unable to leave the United States. Despite any argument to the contrary, the Crew Petitioners are not here "voluntarily."  Indeed, they cannot even leave this judicial district without notification to and approval from the U.S. Coast Guard and U.S. Department of Justice. Through their counsel, the Crew Petitioners have done everything the Government asked of them, including making themselves available for interviews by the Government, and testifying before the Grand Jury.

The Crew Petitioners have spent the past two years of their lives here in the United States, pursuant to the terms of the Security Agreement among Synergy Marine, the Owner of the *M/V DALI*, and the Government, which the Government required before allowing the ship to depart the United States.  They have missed family events, holidays, and time with their loved ones.  They also have lost two valuable years of their professional careers, time which could have been spent productively building skills, maintaining and upgrading their licenses, and advancing up the ranks as merchant seafarers.  In short, the Crew Petitioners have been functionally detained in the United States for an unprecedented period of time and have another year and a half looming over them.

The Crew Petitioners should be permitted to return to their lives and careers.  Because of their roles in the allision involving the *M/V DALI*, the Crew Petitioners' depositions should be taken pursuant to Fed. R. Crim. P. 15 (referred to herein as "Rule 15"), before their departure from the United States, in order to preserve their trial testimony.  As a practical matter, if the Court orders that the Crew Petitioners are discharged after their depositions, the Crew Petitioners will be "unavailable" for purposes of trial after they leave the country. Although live testimony is typically

preferred, there are instances where fact witnesses are considered "unavailable" under Rule 15 because of their foreign residences, citizenship, and/or status as seafarers whose professional obligations require extensive international travel.  This is one of those situations.

Because of the nature of this case, many potential witnesses necessarily are non-U.S. citizens with foreign residences who are employed worldwide, and the Security Agreement presents complex procedural issues that arise only in maritime criminal matters. But these are individuals who are not charged with any crimes and who already have been extremely cooperative with the Government's underlying investigation.  Therefore, in the interest of fundamental fairness and humanitarian necessity, the Synergy Defendants support the Crew Petitioners' request to preserve their testimony by deposition and for their subsequent discharge.

**FACTUAL BACKGROUND**

**I.     THE INDICTMENT AND SUPERSEDING INDICTMENT**

On April 8, 2026, the Grand Jury returned an eighteen-count indictment (the "Indictment") charging Synergy Marine and Synergy Maritime with Conspiracy, substantive violations of the Ports and Waterways Safety Act ("PWSA"), the Clean Water Act, the Refuse Act, Seaman's Manslaughter, Obstruction, and False Statements. ECF No. 1. The Indictment also charges Radhakrishnan Karthik Nair ("Nair") with Conspiracy, violations of the PWSA, Seaman's Manslaughter, Obstruction, and False Statements. *Id.* Though it was filed on April 8, 2026, the Indictment was not unsealed until over a month later, on May 12, 2026. A Superseding Indictment was filed on June 25, 2026, with new factual allegations, but identical charges. ECF No. 50. All of the charges arise out of the Government's investigation following the allision of the *M/V DALI* (the "Vessel") with the Francis Scott Key Bridge.

**II.     THE SECURITY AGREEMENT AND CREW**

Nearly two and a half months after the *M/V DALI*'s allision with the Francis Scott Key Bridge, and well after the outset of its investigation, the Government alleged that the Vessel violated the PWSA, and that there may be criminal or civil penalties against the Vessel *in rem* or against the Owner and/or Manager *in personam.*  Declaration of Kierstan L. Carlson ("Carlson Dec.") ¶ 3 (attached hereto as Exhibit 1).  Under the PWSA, if there is reasonable cause to believe a violation occurred, the U.S. Coast Guard can seek to have a vessel's departure clearance withheld or revoked, effectively holding the vessel in the United States.  46 U.S.C. § 70036(f)(1).  Clearance that has been denied or revoked may be granted "upon filing of a bond or other surety satisfactory" to the U.S. Coast Guard. *Id.* § 70036(f)(2).  Security Agreements, and the obligations therein, are the "surety satisfactory" required to attain departure clearance for subject vessels.  Here, the PWSA was the *only* basis for the Government to demand a Security Agreement and require the crew to remain in the United States.[1]

In or around June 2024, the U.S. Coast Guard (acting in coordination with the Department of Justice) took steps to withhold the Vessel's customs clearance, thus preventing the Vessel from departing the United States to undergo repairs following the allision, though the Coast Guard required this before the Vessel's departure from Baltimore to Norfolk, where she would undergo temporary repairs.  Carlson Dec. ¶¶ 3-4.  On June 18, 2024, the Owner of the Vessel and Synergy Marine entered into an Agreement on Security with the United States as the "surety satisfactory" to permit the Vessel to depart. Declaration of Owen F. Duffy, ECF No. 61-2 ("Duffy Dec.") ¶¶ 14-24; Duffy Dec. Ex. A (the "Security Agreement"). In addition to posting a joint bond, the

---

[1] A similar provision is found within the Act to Prevent Pollution from Ships, but that was not applicable here. *See* 33 U.S.C. § 1908(e).

Government required the companies to agree to have eleven of the Vessel's officers and crewmembers[2] remain within this judicial district for an indefinite period of time. Security Agreement ¶¶ 1-3; Duffy Dec. ¶¶ 16-17.[3] The Security Agreement provides that the Vessel's officers and crewmembers "will remain within the jurisdiction of the U.S. District Court – District of Maryland . . . until the United States, through its attorney responsible for the pending criminal investigation, advises that their presence is no longer necessary." Security Agreement ¶¶ 3, 3(b). Synergy Marine and the Owner also agreed to pay full wages and provide reasonable lodging, a meal/incidental allowance of $69.00 per day, and healthcare to the crewmembers left in this judicial district. *Id.* ¶ 3(b). The Security Agreement was amended on September 18, 2024, to include Synergy Maritime.[4]

All crew members subject to the Security Agreement were required to surrender their passports and have remained in lodging in this judicial district since June 2024.[5] Duffy Dec. ¶¶ 19-20, 25, 30. These crew members, including the Crew Petitioners, have not been charged with any

---

[2] The Security Agreement also applied to an officer who was then sailing on another vessel, the M/V CEZANNE.

[3] During negotiation of the Security Agreement, undersigned counsel proposed to include in the Security Agreement a reasonable time limit on the length of time that the Government could require the *M/V DALI* crew members to remain in the United States. Carlson Dec. ¶ 3. The proposal was tied to the standard set forth in the International Labour Organization's Maritime Labour Convention ("MLC"), under which foreign seafarers are afforded various humanitarian protections, including not being permitted to serve a continuous period of more than 12 months on board a ship. Maritime Labour Convention, 2006 Standard A2.5.1 2(b), Feb. 23, 2006, 2952 U.N.T.S. 51299 (as amended). *Id.* ¶ 4. Counsel made this proposal because the average duration of Security Agreements has expanded substantially in recent years, leading to crew members languishing in hotels in U.S. port cities and extraordinary costs and expenses for vessel owners and operators, and they wanted to avoid such a circumstance for the *M/V DALI* crew members and Synergy Marine. *Id.* ¶ 3. The Government refused to agree to include a time limit in the Security Agreement and would not allow the M/V DALI to depart the United States, unless the Owner and Synergy Marine agreed to an indefinite, open-ended period of time. *Id.* ¶ 4.

[4] The Synergy Defendants objected to the inclusion of Synergy Maritime in the Security Agreement for the M/V DALI because § 70036(f)(1) applies only to Owners, Operators, and Persons in Charge, and it was their position that Synergy Maritime did not fall within the scope of the statute.

[5] Some crew members have been permitted to return to their home countries for brief periods of time, but the Government has required their return and/or that they remain subject to the Security Agreement (and were subject to Grand Jury subpoenas).

criminal conduct, yet have been held in a hotel in a foreign city *for over two years* with no transportation, no passport, and no timeline for their release. Duffy Dec. ¶¶ 19-20, 30, 43-44.  In addition, the Synergy Defendants, together with the Owner, have continued to pay for the crew's wages and accommodation since June 18, 2024. Carlson Dec. ¶¶ 5-6.[6]

The Synergy Defendants are bound by the terms of the Security Agreement and "agree[d] to cooperate with the United States to arrange for testimony of such employed officer or crewmember before . . . [a] judicial or administrative proceeding," and to "use reasonable efforts to encourage these officers and crewmembers to comply with any validly served subpoenas issued by the United States in carrying out its investigation and in appearing for their scheduled testimony."  Security Agreement ¶ 2.  The Synergy Defendants have paid for all transportation costs for the Crew Petitioners and other covered crew members to attend interviews with DOJ and/or provide Grand Jury testimony, as well as the travel expenses for covered crewmembers who returned home for brief periods and were required to return to the United States to provide Grand Jury testimony. Carlson Dec. ¶ 6.  Although the Synergy Defendants will continue to make good faith, reasonable efforts to encourage the crewmembers to comply with subpoenas issued by the United States, the Security Agreement recognizes that they cannot *compel* the crewmembers to return to the United States for trial if they refuse to do so.  Security Agreement ¶ 5.  Presumably for this reason, among others, the Security Agreement specifically provides a mechanism to preserve the crew members' testimony and allow them to return home while the case proceeds. *Id.* ¶¶ 3(e), 7. The Agreement further includes provisions for Rule 15 depositions at paragraphs 3(e) and 7. *Id.* And, Paragraph 7 explicitly preserves the crew members' rights under Rule 15 and 18 U.S.C. § 3144.  *Id.* ¶ 7.

---

[6] Synergy Maritime was not obligated to comply with the Security Agreement until September 18, 2024, but has complied fully since that time.  Carlson Dec. ¶ 6.

### III.    THE CREW PETITIONERS

#### A.    Stephen Fernando Kwinteen Jayakumar

Stephen Fernando Kwinteen Jayakumar ("Jayakumar") was the Chief Mate of the M/V DALI.  Duffy Dec. ¶ 1(A). He joined the Vessel on January 28, 2024, in Tanjung Pelepas. *Id.* Jayakumar was not on duty at the time of the allision; he was resting in his cabin.  *Id.*

Jayakumar surrendered his passport as required and has stayed in this judicial district under the terms of the Security Agreement. *Id.* ¶¶ 19, 30. The Government permitted Jayakumar to depart the United States for a sailing contract, for the period October 26, 2025, to March 6, 2026. *Id.* ¶ 31.  In the travel letter signed by the Government authorizing Jayakumar's travel, the Government wrote that they "continue[] to view Mr. Jayakumar as a material witness in the investigation of activities that occurred aboard the M/V Dali." *Id.*

Since June 2024, the Government has requested four meetings with Jayakumar, all of which he attended and during which he was cooperative. *Id.* ¶ 35.  Jayakumar also testified before the Grand Jury once in March 2026—nearly two years after the accident. *Id.* The Government has not made any requests or asked to speak with Jayakumar since his Grand Jury testimony. *Id.*

#### B.    Rohit Singh Bisht

Rohit Singh Bisht ("Bisht") was the Second Mate of the M/V DALI. *Id.* ¶ 1(B). He joined the Vessel on July 26, 2023, in Hong Kong. *Id.* At the time of the allision, Bisht was standing on the navigation watch on the Vessel's bridge. *Id.* He also assisted the Master and Pilots in the Vessel's departure from the Port of Baltimore. *Id.* Bisht served on the M/V DALI at the same time as Jayakumar and Vaz, whom the Government also views as material witnesses. *Id.* ¶¶ 1(A)-(C), 31-33.

Bisht surrendered his passport as required and has been in this judicial district since the allision. *Id.* ¶¶ 19, 30. Since June 2024, the Government has requested three meetings with Bisht,

and he testified before the Grand Jury once in March 2026. *Id.* ¶ 35. The Government has not made any requests or asked to speak with Bisht since his Grand Jury testimony. *Id.*

### C.     Charles Vaz

Charles Vaz Maria Anthony Jullans Jeyekumar ("Vaz") was the Bosun of the M/V DALI. *Id.* ¶ 1(C). He joined the Vessel on October 18, 2023, in Colombo, Sri Lanka. *Id.* Vaz was on duty at the time of the allision and was on the forward part of the Vessel when it struck the Key Bridge. *Id.* ¶ 36. The Superseding Indictment specifically makes allegations concerning Vaz by reference to his title. Superseding Indictment ¶¶ 83, 97.

Vaz surrendered his passport and has remained in this judicial district nearly continuously since that time. Duffy Dec. ¶¶ 19, 30. The Government permitted Vaz to briefly depart the United States for personal reasons for the period December 2, 2025, to February 21, 2026. *Id.* ¶ 32. In the travel letter signed by the Government authorizing Vaz's travel, the Government wrote that they "continue[] to view Mr. Vaz as a material witness" in the *M/V DALI* investigation.

Since June 2024, the Government has only requested a meeting with Vaz, and he was never asked to testify before the Grand Jury. *Id.* ¶ 35.

*     *     *

Each of the Crew Petitioners referenced above served on board the Vessel in the months prior to and during the allision. Although the Crew Petitioners have been deemed material witnesses by the Government, none has been charged with any crime and the Government's contact with Vaz has been *de minimis*. Jayakumar, Bisht, and Vaz are foreign nationals who reside outside the United States but have been functionally detained since at least June 18, 2024.[7]

---

[7] Before the Crew Petitioners were disembarked from the M/V DALI, they were subject to a CBP order preventing them from leaving the Vessel while it was in Baltimore, Maryland.

Accordingly, the Court should grant the Motion and allow Crew Petitioners to be deposed and discharged pursuant to Rule 15.

## **LEGAL ARGUMENT**

**I.     STANDARD FOR GRANTING RULE 15 DEPOSITIONS**

Federal Rule of Criminal Procedure 15(a)(1) provides:

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data.

Further, after the deposition is taken, the Court may discharge the witness under Fed. R. Crim. P. 15(a)(2).

A motion to take a deposition in a criminal case may be granted "because of exceptional circumstances and in the interest of justice." *United States v. Fleet Mgmt. Ltd.*, Crim. No. 07-279, 2007 U.S. Dist. LEXIS 63213, at *1 (E.D. Pa. 2007) (citing Fed. R. Crim. P. 15(a)(1)); *see also United States v. Baldwin*, 149 F.4th 959, 966 (7th Cir. 2025) (same). Although depositions are appropriate "only if the witness[es] may be unable to attend trial," *United States v. Fei Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006) (quoting *United States v. Cutler*, 806 F.2d 933, 936 (9th Cir. 1986)), Rule 15 "does not require any conclusive showing of unavailability or material testimony before a deposition can be taken in a criminal case," *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998) (internal quotation marks and citation omitted), and "[d]istrict courts retain broad discretion to define exceptional circumstances." *Baldwin*, 149 F.4th at 966 (internal quotation marks and citation omitted).

For the reasons set forth below, exceptional circumstances exist and the Court should order the parties to conduct Rule 15 depositions of the Crew Petitioners as they have requested.

## II.   EXCEPTIONAL CIRCUMSTANCES EXIST AS TO THE CREW PETITIONERS

### A.  The Crew Petitioners Have Been Functionally Detained for Over Two Years

The crew members, despite not being charged with any crimes, have been and remain functionally detained. Courts in similar situations have exercised their discretion to order depositions under Rule 15,[8] while others have done so, finding crew members to be "functionally detained."[9]  In *United States v. Dalnave Navigation*, the Court ordered Rule 15 depositions to be taken within weeks of its decision, observing:

> The Material Witnesses have been in the country against their will for over six months, with little end in sight. They have done nothing wrong. They are charged with no crimes. Their families ache for their return, but because the Government retains their passports, they are precluded from leaving the country. Enough is enough.

*United States v. Dalnave Navigation Inc.*, Cr. No. 09-130, 2009 WL 743100, at *2 (D.N.J. Mar. 18, 2009).

The Government has required Jayakumar, Bisht, and Vaz to remain in the United States for over two years. They have not been charged with any crimes, nor has the Government alleged any wrongdoing on their part.  Their passports remain with an agent pursuant to the Security Agreement and they are precluded from leaving the United States and even this judicial district,

---

[8] *See, e.g., Dalnave Navigation*, 2009 WL 743100, at *2 (evaluating the parties' arguments concerning whether crew members seeking Rule 15 depositions were "detained" for purposes of Rule 15(a)(2) and exercising discretionary authority to order depositions).

[9] *In re Material Witness Summons in re Motor Tanker Zao Galaxy*, Case No. 19-xr-90626-KAW-1, 2019 WL 4221727 (N.D. Cal. Sept. 5, 2019) (finding a seafarer "functionally detained" where he had his passport taken from him and was compelled to remain in the district for over six months under the security agreement); *Mercator Lines Ltd. (Sing.) Pte Ltd. v. M/V GAURAV PREM*, Misc. No. 11-00024-CG-C, 2011 WL 10637454 (S.D. Ala. Oct. 25, 2011) (finding a seafarer "functionally detained" under § 3144 where his passport was taken under a security agreement, he was required to stay in a hotel in the district, and could not leave the country, being kept away from his home and family in Thailand); *U.S. v. Maniatis*, No. 07-CR-0024 DLJ, 2007 U.S. Dist. LEXIS 47543, at *3-4 (E.D. Cal. June 20, 2007) (finding that seafarer "while not formally detained under 18 U.S.C. § 3144, is a functionally detained material witness under Rule 15. Petitioner's passport has been taken from him, and he has been compelled to remain in the United States pending trial in this matter" and noting "[r]equiring Petitioner to remain in the United States for at least another three months ***would not be in the interests of justice.***") (emphasis added).

without permission from the Government. If one of the Crew Petitioners were to demand the return of his passport, there would be a 72-hour waiting period before the agent could give it back, in order to allow the Government to formally detain him as a material witness, or for the Owner and manager to request a Rule 15 deposition.

The length of time the Crew Petitioners have remained in the United States is extraordinary and rises to the level of an "exceptional circumstance." In other federal jurisdictions, time limits have been established for the detention of material witnesses by standing orders. *See Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 415 (5th Cir. 1992) (45 days in the Southern District of Texas); *United States v. Allie*, 978 F.2d 1401, 1403 (5th Cir. 1992) (60 days in the Western District of Texas). Notably, the crewmembers here have been kept in the United States for far longer than cases involving the functional detention of similarly uncharged crewmembers in maritime criminal cases. *See United States v. Maniatis*, Case 2:07-cr-00024-DLJ (E.D. Cal. June 21, 2007), ECF No. 117 (seven months); *In re Blow Wind Shipping, S.A.*, Case No. 10-mj-0056, 2010 U.S. Dist. LEXIS 144359 (D. Me Apr. 16, 2010) (one month); *Mercator Lines Ltd. (Sing) Pte Ltd. v. M/V GUARAV PREM*, Case No. 11-misc-0024, 2011 WL 10637454, at *8 (S.D. Ala. Oct. 25, 2011) (one month); and *In re Motor Tanker ZAO GALAXY*, Case No. 19-xr-09626, 2019 WL 4221727 (N.D. Cal. Sept. 5, 2019) (seven months). The prolonged detention of material witnesses is an exceptional circumstance. *See United States v. Li*, No. 08-CR-212, 2008 WL 4104062, at *3 (E.D. Wis. Sept. 4, 2008) ("Furthermore, continued detention of these three individuals as material witnesses is an imposition (perhaps even a hardship) on them. Indeed, this Court is not alone in considering the humanitarian costs of prolonging the detention of these material witnesses as an 'exceptional circumstance.'"); *Torres-Ruiz v. United States Dist. Court*, 120 F.3d 933, 936 (9th Cir. 1997) ("The continued detention of these material witnesses, whose testimony could be

11

adequately preserved by videotaped deposition and whose families are suffering extreme hardship as a result of petitioners' continued detention, is an exceptional circumstance.").

As the district court in *Dalnave* held, "[e]nough is enough."[10] *Dalnave*, 2009 WL 743100, at *2.

### B. If Permitted to Return Home, The Crew Petitioners Are Unavailable to Testify at Trial

Courts have found that exceptional circumstances exist within the meaning of Rule 15 where the witness is unavailable to testify at trial. *See United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987). It is well-settled that "[a] potential witness is unavailable for purposes of Rule 15(a) . . . whenever a substantial likelihood exists that the proposed deponent will not testify at trial." *Fleet Mgmt.*, 2007 U.S. Dist. LEXIS 63213, at *3 (citing *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993)). However, a party need not conclusively establish that a witness will be unavailable to testify at trial in order to obtain an Order to take that witness's Rule 15 deposition. *See United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985). Only a "substantial likelihood of unavailability" must be shown. *Fleet Mgmt.*, 2007 U.S. Dist. LEXIS 63213, at *3. A substantial likelihood of "unavailability" has been found where the relevant witnesses are beyond the subpoena power of the Court. *See id.* at *3–4 (citing *United States v. Ramos*, 45 F.3d 1519, 1523

---

[10] At this point, the Crew Petitioners (and other crew subject to the Security Agreement) have been functionally detained for almost 28 months, far longer than they should be expected to be separated from their families and seagoing careers put on hold. Although the United States is not a party to the MLC, the U.S. government has functionally detained these foreign seafarers far more than is contemplated under the international humanitarian standards set forth therein. *See supra* note 3 and accompanying text. The length of the functional detention in this matter is unprecedented. The Synergy Defendants respectfully submit that the U.S. government's functional detention of these seafarers violates at least the spirit, if not the letter, of the International Maritime Organization (IMO) Guidelines on the Fair Treatment of Seafarers Detained in Connection with Alleged Crimes. *See* International Maritime Organization [IMO], *Adoption of Guidelines on Fair Treatment of Seafarers in the Event of a Maritime Accident*, Res. LEG.3(91), (Apr. 27, 2006), https://www.ilo.org/sites/default/files/202510/Guidelines20on%20Fair%20Treatment%20of%20Seafarers%20Detained%20in%20Connection%20with%20Alleged%20Crimes_0.pdf. While the MLC and these IMO guidelines are not legally binding on the U.S. government, they support the position that "exceptional circumstances" exist in this matter and that it is in the "interests of justice" to order depositions of the Crew Petitioners and discharge them under Rule 15.

(11th Cir. 1995)). Residing outside the subpoena power of the Court is the critical factor when determining unavailability, as even if a witness declares his or her willingness to testify at trial, the Court cannot compel the witness's appearance should he or she fail to appear at trial. *See id.*; *see also Baldwin*, 149 F.4th at 967 ("We agree with our sister circuits. One way in which a witness is unavailable within the meaning of Rule 15(a)'s exceptional circumstances requirement is when he is beyond the subpoena power of the United States and the court finds that he is substantially unlikely to testify in person at trial.")

The Crew Petitioners are foreign nationals who reside overseas and—if they are permitted to return home—there is a substantial likelihood they will be unavailable for trial. Even if the Crew Petitioners were willing to return to the United States to testify at trial, there remain practical considerations that could impede their return.  The Crew Petitioners could elect to work for vessels other than those managed by Synergy Defendants. Even if the Crew Petitioners elect to continue working on vessels managed by the Synergy Defendants, the Synergy Defendants cannot compel the Crew Petitioners to return to the United States and/or testify at trial. Courts have found that foreign seafarers, such as the Crew Petitioners, should be considered "unavailable" for Rule 15 purposes if they work or reside outside of the United States. *Fleet Mgmt.* at *4. As the government argued in *Fleet Mgmt.*, as members of the maritime field, "[the Crew Petitioners] are engaged in an industry that routinely involved long tours at sea when they are literally unavailable to either the government or any defendants. In short, it is likely that they would not be in India, but rather, on a ship at sea. In addition, a mandatory appearance for trial in the United States would likely involve extreme financial hardship for the crew members because it could easily result in their having to miss a scheduled tour of service." Government's Motion to Take Rule 15 Depositions

of Material Witnesses at 22, *United States v. Fleet Mgmt., Ltd.*, Crim No. 07-279, ECF No. 4 (E.D. Pa. May 16, 2007).

"When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony—by deposing the witness—absent significant countervailing factors which would render the taking of the deposition unjust." *Drogoul*, 1 F.3d at 1552.

## III.    DEPOSITIONS SHOULD BE ORDERED IN THE INTEREST OF JUSTICE

In determining whether, due to exceptional circumstances, it is in the interest of justice to take and preserve the testimony of a prospective witness, the Court should consider (a) if it appears that the prerequisites for admission of the proposed deposition will be present at the trial through no failure, neglect, or lack of diligence by the movant; (b) if the testimony is relevant and material; and (c) if it is necessary to take the deposition to prevent a failure of justice. *See United States v. Singleton*, 460 F.2d 1148, 1153-54 (2d Cir. 1972).

As regards the Crew Petitioners identified in this motion, they are former crew members who served on the Vessel in the months leading up to, at the time of, and immediately after its allision with the Francis Scott Key Bridge.  Moreover, in this case, the Government has taken the position that each of the Crew Petitioners is a material witness and subpoenaed two of the Crew Petitioners to testify before the Grand Jury. The fact that the Government views the Crew Petitioners as material witnesses supports the position that their depositions be taken, so that their testimony can be preserved. The parties should have the opportunity to depose the Crew Petitioners to preserve their testimony for trial. Failing to order the deposition of the Crew Petitioners will result in an injustice to the parties, particularly the Synergy Defendants, and, insofar as they may have exculpatory testimony, it would not be preserved for trial in the event the Crew Petitioners are unavailable for trial.

14

## **CONCLUSION**

For the reasons above, the Synergy Defendants join the Crew Petitioners and respectfully request that the Court issue an Order directing the parties take the depositions of the Crew Petitioners and discharge the Crew Petitioners from detention.

Dated: July 22, 2026

BLANK ROME LLP

*s/ Luke M. Reid*
Luke M. Reid (Federal Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Alexandra Clark
Alexandra.Clark@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200

Joseph G. Poluka*
Joseph.Poluka@blankrome.com
130 N. 18th Street
Philadelphia, PA 19103
215-569-5500

*Admitted *pro hac vice*

15

**CERTIFICATE OF SERVICE**

I, Luke M. Reid, hereby certify that on this 22nd day of July 2026, a copy of the foregoing Response in Support of the Crew Petitioners' Motion for an Order Directing the Parties to Depose the Petitioners Pursuant to Fed. R. Crim. P. 15 and for the Discharge of Petitioners Following Completion of the Depositions was served on all parties via the Court's ECF system.

*s/ Luke M. Reid*
Luke M. Reid (Federal Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200