UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Case No. 1:26-cr-00118-JKB |
| SYNERGY MARINE PRIVATE LTD., *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## OPPOSITION TO DEFENDANTS' MOTION FOR A BILL OF PARTICULARS

The United States of America, by its undersigned counsel, submits this Opposition to the Defendants' Motion for a Bill of Particulars, ECF No. 57.

### I.   INTRODUCTION

Defendants Synergy Marine Private Ltd. and Synergy Maritime Private Ltd. (collectively "Synergy" or "Synergy Defendants") have filed a Motion seeking a Bill of Particulars as to certain aspects of the charges against them.  ECF Nos. 57 and 57-1 ("Motion").  As explained herein, the Superseding Indictment adequately puts the Synergy Defendants on notice of the charges against them.  ECF No. 50 ("Superseding Indictment").  The Superseding Indictment is 51 pages and provides significant detail beyond the pleading requirements of each charged statute.  The Government has also produced a significant amount of discovery, and the discovery, coupled with the detailed Superseding Indictment, adequately provide the Synergy Defendants with notice of the charges against them.  The Court should deny the Motion.

### II.   LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment is required to "be a plain, concise, and definite written statement of the essential facts constituting the offense

1

charged." An indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charges against which he must defend, and, second, enables him to plead an acquittal or conviction in a bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Likewise, "[t]he purpose of a bill of particulars is to enable a defendant to obtain sufficient information on the nature of the charges against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." *United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973). If the indictment satisfies these purposes, a bill of particulars is unnecessary, and its denial does not constitute an abuse of discretion. *United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989); *United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir. 1985). A bill of particulars should be required by the court only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he or she is accused. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

A defendant is not entitled to a bill of particulars as a matter of right. *Wong Tai v. United States*, 273 U.S. 77, 82 (1927). Generally, where the indictment contains sufficient detail and the government provides full discovery, a bill of particulars is not required. As one commentator has stated: "If the needed information is in the indictment, then no bill of particulars is required. The same result is reached if the government has provided the information called for in some other satisfactory form." 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 5129 at 437 (1982); *see also United States v. Soc'y of Indep. Gasoline Marketers*, 624 F.2d 461, 466 (4th Cir. 1979); *United States v. Giese*, 597 F.2d 1170, 1180-81 (9th Cir. 1979) (full discovery obviates the need for a bill of particulars).

"Acquisition of evidentiary detail is not the function of the bill of particulars." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (quoting *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968)).  Nor is it intended to allow defendants a preview of how the government intends to present its evidence at trial, or to permit the defense to explore the legal theories underlying the government's case.  *See United States v. Barnes*, 158 F.3d 662, 665-66 (2d Cir. 1998); *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000); *United States v. Hsia*, 24 F. Supp. 2d 14, 30 (D.D.C. 1998) ("A bill of particulars properly includes clarification of the indictment, not the government's proof of its case."); *United States v. DeSalvo*, 797 F. Supp. 159, 174-75 (E.D.N.Y. 1992) (motion for bill of particulars would be denied where "Defendant clearly seeks to discover not just the contours of the case . . . defendant seeks in detail the sort of arguments that the government will make to bolster its arguments").

But where, as here, the indictment fully complies with the requirements of the Fifth and Sixth Amendments and Rule 7(c), "[a] bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial."  *United States v. Automated Med. Lab., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985); *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996).  As another circuit has stated, "A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government investigation . . . .  Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation."  *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (citation omitted; emphasis in original);*see also United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)  (a bill of particulars "is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial"); *United States*

*v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973) (the function of a bill of particulars is not to provide detailed disclosure of the government's evidence in advance of trial, but to supply any essential detail that may have been omitted from the indictment), *aff'd*, 417 U.S. 211 (1974); *Hemphill*, 392 F.2d at 49.

## III.     ANALYSIS

### A. The Government has sufficiently pleaded Counts 1 through 4 and 12 through 15, and a bill of particulars is not necessary.

The Synergy Defendants seek a bill of particulars identifying the natural persons who engaged in criminal wrongdoing, thereby incurring criminal liability against the Synergy Defendants.  The Synergy Defendants further seek a bill of particulars identifying all co-conspirators, principals, and aiders and abettors.  As explained herein, the Superseding Indictment contains sufficient detail for the Synergy Defendants to prepare for trial.  The Court should deny their request for a bill of particulars.

### i. The conspiracy charge in the Superseding Indictment provides sufficient detail and a bill of particulars is not warranted.

Title 18, Section 371 states that conspiracy is where "two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof . . . and one or more of such person do any act to effect the object of the conspiracy" each person shall be fined or imprisoned.  18 U.S.C. § 371.  The charging language explains that the Defendants conspired to defraud an agency of the United States, the U.S. Coast Guard, and to violate two different statutes, 46 U.S.C. § 70036 and 18 U.S.C. § 1001.  The Synergy Defendants do not appear to contest that Count One of the Superseding Indictment tracks the statutory language of § 371.  Further, the statute requires the Government to plead one overt act.  The Superseding Indictment alleges 34 overt acts that are organized by subject matter.  In addition to

4

the overt acts, Count One provides more than twenty pages of background information and outlines the purpose of the conspiracy and the manner and means used to execute the conspiracy – none of which is  required by statute.

The Synergy Defendants contend that the Government should be required to separately identify in a bill of particulars the persons out of whom liability arises.  For example, the Synergy Defendants cite paragraph 9 of the Superseding Indictment, which is an introductory paragraph, that states, "Synergy employees, including shoreside technical managers, knew of the use of the flushing pump," "Synergy employees took steps to hide the use of the flushing pump," and that "multiple Synergy managers, including [Nair], lied to investigators[.]"  ECF No. 57-1 (quoting ECF No. 50 at 3-4).  Although these are introductory allegations and not the essential elements of the conspiracy offense, these allegations are discussed in detail throughout the overt acts.  For example, overt acts (a) through (d) discuss the efforts of a former Chief Engineer on the *M/V Dali* to conceal the use of the flushing pump to class by falsely stating that the proper fuel supply and booster pumps were "running satisfactorily."  ECF No. 50 at 30.  Overt act (e) alleges that Nair eliminated any reference to the flushing pump in a Vessel Inspection Report.  Overt acts (p) and (r) allege that Nair and TS 2[1] lied to the National Transportation Safety Board ("NTSB") about their knowledge of the flushing pump.  *Id.* at 33.  These allegations enable the Synergy Defendants to defend themselves without a bill of particulars.

The cases cited by the Synergy Defendants do not help them.  In *United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998), the district court largely denied the defendant's motion for a bill of particulars, but granted it as to the defendant's request that the government identify the actors

---

[1] The Superseding Indictment identifies TS 2 as a Synergy employee who was the "Technical Superintendent for the *M/V Cezanne* and the *M/V Maersk Saltoro*."  ECF No. 50 at 5, ¶ 16.

who engaged in overt acts on behalf of a corporation. The charging document in that case, however, only identified the corporation as the person who engaged in the overt act. *Id.* Here, the Government has identified the relevant actors who engaged in each overt act. The actors have been anonymized, but the Synergy Defendants are aware of who those individuals are, or can readily determine who they are from discovery. For example, overt act (a) states, "On or about March 2, 2023, the Chief Engineer on the *M/V Dali*, ("CE 2") created or caused to be created four Chief Engineer's Open-Up Inspection certificates[.]" ECF No. 50 at 30. The Synergy Defendants know who the chief engineer on the *M/V Dali* was on March 2, 2023, and they have the four certificates that bear his name.

The Synergy Defendants also cite *United States v. Tarpon Springs Exchange*, 142 F. 2d 125 (5th Cir. 1944). In that case, the Fifth Circuit overturned the district court's decision to dismiss a poorly drafted indictment, finding that the correct remedy was to order a bill of particulars. *Id.* at 127. That decision adds little value here.

Similarly, the Government should not have to identify every co-conspirator in the bill of particulars. "Whether the Government must furnish the names of co-conspirators to a defendant lies within the trial court's discretion." *United States v. Kwang Hee Kim*, No. 1:12cr280 (JCC), 2012 WL 5879830, at *2 (E.D. Va. Nov. 20, 2012) (citing *United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir. 1985)). Where the indictment "sets forth the discrete acts evidencing a defendant's involvement in a conspiracy, courts have held that the identities of co-conspirators need not be revealed." *Id.* (citing *United States v. Frye*, No. 5:01-CR-30058, 2002 WL 385574, at *2 (W.D. Va. Feb. 20, 2002)). Here, Count One sufficiently explains the conspiracy charge against the

6

Synergy Defendants, and no further explanation is required.[2]

Discovery is also relevant here.  *See, e.g.*, *United States v. Giese*, 597 F.2d 1170, 1180-81 (9th Cir. 1979).  The Government has produced several terabytes of material that can be used to understand the charges.  Although the volume of discovery is large, the Synergy Defendants are not looking for needles in a haystack.  The Synergy Defendants have a 50-page charging document and 34 overt acts to guide their review.

> ii.  *The Government has adequately pleaded the Ports & Waterways Safety Act Counts.*

Counts Two through Four charge all three defendants with violating the Ports & Waterways Safety Act ("PWSA").  The PWSA criminalizes any knowing and willful violation of the regulations enacted pursuant to the PWSA.  46 U.S.C. § 70036.  The relevant PWSA regulation here, which is cited in the Superseding Indictment, states:  "Whenever there is a hazardous condition either on board a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge must immediately notify the nearest Coast Guard Sector Office[.]" 33 C.F.R. § 160.216.  The charging language in the Superseding Indictment mirrors the statute and the regulation, stating that the Synergy Defendants "knowingly and willfully failed to and caused the failure to immediately notify the U.S. Coast Guard that a hazardous condition existed aboard the *M/V Dali*."  ECF No. 50 at 36.  The charging language also provides the date of each charged offense, and the PWSA charges incorporate the relevant paragraphs from Count One.

The Synergy Defendants argue that the Superseding Indictment "does not identify the employee(s) or agent(s) whose conduct allegedly created corporate liability. Nor does it identify

---

[2] In the Government's experience, the court has ordered the Government to informally provide a list of the co-conspirators prior to trial.  The Government would agree to make such a disclosure here, even where a bill of particulars is not warranted.

who had a duty under the PWSA to notify the U.S. Coast Guard on those dates, who allegedly failed to notify or caused the failure to notify, or, most importantly, who possessed the 'willful and knowing' mental state required for a PWSA violation."  ECF No. 57-1 at 13.  The Superseding Indictment identifies Nair as a defendant for each of these counts.  Synergy's Safety Management System states that the Technical Superintendent and Marine Superintendent "are identified as ***in charge*** for each vessel and the vessel shall report to them for all issues concerning the performance of the vessel."[3]  *See* Synergy Group Ship Management Manual, Chapter 04B, attached in relevant part as **Exhibit A**.  Synergy's own documentation identifies Nair as being "in charge" of the *M/V Dali*, and the PWSA regulations require a person "in charge" of the vessel to report a hazardous condition.  *See* 33 C.F.R. § 160.216.  As such, the Synergy Defendants are on notice that Nair is an individual out of whom liability arises against the company.

Additionally, individuals who are not identified reporters under the PWSA can still be held criminally liable under an aiding and abetting theory.  In *United States v. Empire Bulkers Ltd.*, 583 F. Supp. 3d 746, 756-57 (E.D. La. 2022), the court held that an engineer could be held criminally liable for aiding and abetting a violation of the same hazardous condition regulation at issue here.[4]  Consistent with this approach, the Chief Engineer of the *M/V Dali* at the time of the allision, Karthikeyan Deenadayalan, agreed in his Deferred Prosecution Agreement to the essential elements of a PWSA violation even though "engineer" is not listed as an individual with reporting

---

[3] As stated in the Superseding Indictment, international law requires Synergy to have a Safety Management System ("SMS").  ECF No. 50 at 12.  Synergy's SMS consists of a series of manuals that provided instructions, guidelines, and policies regarding the safe operation of the vessel.  *Id.*

[4] In another criminal maritime case, the Fourth Circuit acknowledged that engineers could be held liable under the Act to Prevent Pollution from Ships ("APPS") for failing to maintain an accurate oil record book under an aiding and abetting theory.  *United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 198 (4th Cir. 2018).  The relevant APPS regulation stated that the master, not an engineer, was responsible for maintaining an accurate oil record book.  *Id.*

obligations under the PWSA.[5]

The Superseding Indictment, the discovery, and Mr. Deenadayalan's Deferred Prosecution Agreement all adequately put the Synergy Defendants on notice of the charges against them.

> ### iii. *The false document charges are sufficiently pleaded and do not require a bill of particulars.*

Counts 12 through 15 relate to the use and submission of the false electrical certificates on the *M/V Dali*. Count 12 charges obstruction of an agency proceeding, in violation of 18 U.S.C. § 1505 related to the submission of the false certificates to the NTSB, and Counts 13 through 15 charge separate violations of 18 U.S.C. § 1001 related to: (1) displaying the false electrical certificates on the *M/V Dali* when it entered the Port of Baltimore; (2) submitting the false electrical certificates to the NTSB; and (3) submitting the false electrical certificates to the grand jury.

The obstruction statute states, "whoever corruptly . . . influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States," is guilty of a crime. 18 U.S.C. § 1505. The false statement statute reads, in part, "whoever, in any matter within the jurisdiction of the executive . . . branch of the Government of the United States, knowingly and willfully . . . (3) makes or uses any false writing or document knowing the same to contain any materially false, fictious, or fraudulent statement or entry" is guilty of a crime. *See* 18 U.S.C. § 1001.

The charging language in the Superseding Indictment for these counts mirrors the statutory language under both statutes. The charges also identify the date of each offense and the specific documents related to each offense. ECF No. 50 at 41-42.

---

[5] *See* DPA Statement of Facts in Case No. 1:26-cr-00197-JKB at ECF No. 17-1

9

The Synergy Defendants argue that the charges "fail[] to specify which corporate employee(s) or agent(s)" made the false documents. ECF No. 57-1 at 9. Counts 12 through 15, however, incorporate the extensive conspiracy section that contains specific overt acts related to Nair's acquisition of the false electrical certificates. Discovery is also relevant here. The Government has produced – after receiving it from Synergy in the first instance – the text message and email communications related to Nair's efforts and the efforts by others at Synergy to acquire the false certificates. The discovery includes text messages between Nair and the individual referenced as "another agent of SYNERGY" in overt act (s). For purposes of this filing, the Government will refer to this individual as MZ. Nair implored MZ to "discuss with yard if they can just provide with a certificate (no need to do actual test) of test carried out to submit to class. You can just check and negotiate for say some 100 USD for the certificate. Please try and convince yard." *See* March 28, 2020 Text Message Extract, attached as **Exhibit B**.[6] After one vendor refused to provide the certificates, Nair sent a text message to MZ, stating, "They are not agreeing can you try from your side to convince if required can pay more as well" and "If extra money is required let me know how much they are expecting." *See* April 8-9, 2020 Text Message Extract, attached as **Exhibit C**. MZ later stated to Nair, "This company is impossible. I am trying to find another company." *Id.* The discovery includes email correspondence involving Nair and others at Synergy attempting to obtain false certificates. One Synergy employee seemed to bristle when a vendor refused to provide the certificates, stating:

> As per our discussion you have already agreed to provide us the certificate without the service. If you had a problem with providing the certificate you should have informed us in the first itself.

---

[6] These text messages occurred through a platform known as WeChat. The Government has determined that the WeChat ID beginning "wxid_tynkk" is Nair and the WeChat ID beginning "wxid_rkex" is MZ.

10

> Our vessel is about to depart in next two day.  If you have informed us little earlier we would have had time to check with some other supplier but as of now we do not have time to do so.
>
> Kindly please try to understand our situation and provide us the certificate.

*See* Apr. 8, 2020 Email, attached as **Exhibit D**.  The discovery also includes email correspondence from the vendor who ultimately provided the certificates.  *See* April 14, 2020 Email, attached as **Exhibit E**.

The Superseding Indictment together with discovery provide the defense with adequate notice of the false document charges against them, and the Court should deny their request for a bill of particulars.

### B.  The Government has sufficiently pleaded the Seaman's Manslaughter counts, Counts 5 through 10.

The Seaman's Manslaughter statute reads, in relevant part, "Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed" is guilty of a crime.  18 U.S.C. § 1115.  The charging language in the Superseding Indictment similarly states that the three defendants, "engaged in gross negligence, willful misconduct, violations of law, and gross inattention to the duties onboard and with respect to the *M/V Dali*[.]"  ECF No. 50.

In addition to the statutory language, the Superseding Indictment lists sixteen specific failures in support of the charges.  Those sixteen failures can be grouped into two categories:  (1) failures related to the flushing pump; and (2) failures related to the anchor.  The Seaman's Manslaughter charges also incorporate the extensive background and overt acts from the Conspiracy count.  The flushing pump and the anchor are discussed extensively in Count One, and when the counts are read together, the Superseding Indictment provides adequate notice to the Synergy Defendants as to these charges.

11

Synergy contends that they have not been notified of the natural persons alleged to have engaged in the acts described in the Superseding Indictment.  Nair is charged in Counts Five through Ten, and so Synergy cannot claim that they lack notice as to Nair.  To the extent that Nair is not a person employed "on" a vessel as stated in the statute, he can be held liable on an aiding and abetting theory, and 18 U.S.C. § 2 is charged as to Counts Five through Ten.  The Synergy Defendants are also on notice through the Superseding Indictment, Mr. Deenadayalan's DPA, and the statute itself, that the Synergy Defendants can be held liable through their chief engineer. Further, both the master and the bosun were employed "on" the *M/V Dali*, and their failures with respect to the anchor are discussed in Count One of the Superseding Indictment, which is incorporated into Counts Five through Ten.  The Seaman's Manslaughter charges are adequately plead, and the Synergy Defendants are not entitled to a bill of particulars.

**C. The Superseding Indictment adequately states the charges against both Synergy Defendants.  The Government is not required to list its evidence or legal theory in a bill of particulars.**

Defendants Synergy Marine and Synergy Maritime are charged in every count in the Superseding Indictment.  The Synergy Defendants argue that the Government should be required to explain which acts in the Superseding Indictment are attributable to which Synergy Defendant. ECF No. 87-1 at 18-19.  The Synergy Defendants argue that the Government "collapses" the Synergy Defendants in the Superseding Indictment.  *Id.*

The Superseding Indictment adequately puts both Synergy Defendants on notice of the charges against them.  Although the Government does "collapse" the Synergy Defendants for certain purposes in the Superseding Indictment, the Superseding Indictment separately defines both entities, explains that Synergy Marine was the operator of the *M/V Dali*, that Synergy Marine hired its subsidiary, Synergy Maritime, to operate the *M/V Dali*, and that Synergy Maritime

operated its own fleet of vessels, including the *M/V Cezanne* and *M/V Saltoro*. *See* ECF No. 50 at 4-5. The Superseding Indictment also separately charges both Synergy entities in each count. The Superseding Indictment adequately puts both Synergy entities on notice of the charges against them. By asking the Court to order the Government to organize its allegations as to one entity or the other, the Synergy Defendants are not challenging the sufficiency of the Superseding Indictment but are instead seeking a listing and organization of the Government's evidence. The Synergy Defendants are not entitled to such an explanation. *See United States v. Automated Med. Lab., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) ("A bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial.")

Further, the Government is not prohibited from holding both Synergy entities liable for the same conduct. In *United States v. Oceanic Illsabe Ltd.*, 889 F. 3d 178 (4th Cir. 2018), the Fourth Circuit upheld a criminal conviction against two related corporate vessel managers, finding that the two individual defendants, the chief engineer and the second engineer, were acting within the scope of their employment for both entities. *Id.* at 195. Federal courts are also not bound by "the strict standards of the common law alter ego doctrine that would apply in a tort or contract case." *Brotherhood of Locomotive Engineers v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 26 (1st Cir. 2000) (quoting *Capital Tel. Co. v. FCC*, 498 F.2d 734, 738 (D.C. Cir. 1974)). In federal cases, "a corporate entity may be disregarded in the interests of public convenience, fairness and equity." *Id.* (quoting *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981)).

The Government will be required to prove its case as to both entities at trial, but the Superseding Indictment adequately puts both corporate defendants on notice of the charges against them.

**D. The Government adequately charged obstruction of an agency proceeding, Count Eleven.**

13

The Synergy Defendants seek a bill of particulars identifying which specific statements by Nair to the NTSB are alleged to have been false in Counts Eleven, which charges obstruction of an agency proceeding.  The relevant section of the statute reads, "Whoever corruptly . . . influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States . . . [.]"  18 U.S.C. § 1505.  The Superseding Indictment mirrors this language, stating that, on or about May 29, 2024, the day of Nair's NTSB interview, the Synergy Defendants "did corruptly influence, obstruct, and impede the due and proper administration of law in a pending proceeding before the National Transportation Safety Board ("NTSB"), by making false and misleading statements[.]"  ECF No. 50 at 40.  In addition to the standard charging language, the Superseding Indictment lists three categories of false statements: (1) Nair's knowledge of the *M/V Dali*'s fuel consumption on generators 3 and 4; (2) Nair's knowledge of the flushing pump; and (3) electrical testing that was allegedly performed while the vessel was in drydock in 2020.  *Id.*

In addition to the three categories listed in the Superseding Indictment, the Synergy Defendants further seek to require the Government to provide the specific statements by Nair that were false.  A false statement charge, however, "need not specify in the indictment the particular false statements upon which the charge is based."  *United States v. Fitzgerald*, 514 F. Supp. 3d 721, 767-68, (citing *United States v. Mermelstein*, 487 F. Supp. 2d 242, 251 (E.D.N.Y. 2007)).  The NTSB interview was transcribed and recorded on video.  All parties are in possession of the video, and the transcript is publicly available.  The Synergy Defendants have been fairly apprised of the charges against them, and they can adequately prepare for trial as to Count Eleven without page and line citations from Nair's interview transcript.

## IV.    CONCLUSION

WHEREFORE, the Government requests that the Court deny Defendants' Motion for a Bill of Particulars, ECF No. 57.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: _____/s/_____
Matthew P. Phelps, No. 17933
Bijon A. Mostoufi, No. 816580
Kimberly S. Phillips, No. 811611
Assistant United States Attorneys
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
matthew.phelps@usdoj.gov
bijon.mostoufi@usdoj.gov
kimberly.phillips@usdoj.gov

Adam R. F. Gustafson
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division

By: _____/s/_____
Leigh P. Rendé
(PA Bar No. 203452)
United States Department of Justice
Environmental Crimes Section
150 M Street, NE
Washington, D.C. 20002
(202) 532-3344
leigh.rende@usdoj.gov

COUNSEL FOR THE UNITED STATES