**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **v.** | * | **Case No. 1:26-cr-00118-JKB** |
| **SYNERGY MARINE PRIVATE LTD.,** ***et al.*****,** | * | |
| | * | **FILED UNDER SEAL** |
| **Defendants.** | * | |

* * * * * * * * * * * * *

## THE UNITED STATES OF AMERICA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR HEARING TO EVALUATE POTENTIAL CONFLICTS OF INTEREST

The United States of America, by its undersigned counsel, submits this Reply Brief in Support of its Motion for a Hearing to Evaluate Potential Conflicts of Interest.

### I. INTRODUCTION

The Government filed a Motion requesting that the Court schedule a hearing to evaluate the potential conflicts of interest related to the Blank Rome law firm, which represents the defendants Synergy Marine Private Ltd. and Synergy Maritime Private Ltd. (hereafter "Synergy" or the "Synergy Defendants"). ECF No. 75 ("Motion"). The Government argued that Blank Rome attorneys may have a potential conflict of interest arising out of the "attorney as witness" rule in the Maryland Rules of Professional Conduct. Synergy opposed the Motion, and its Opposition attached two declarations from Blank Rome attorneys William Bennett ("Mr. Bennett") and Alan Weigel ("Mr. Weigel") (collectively, the "Declarations"). ECF No. 88. Synergy's Opposition and the supporting Declarations confirm that several Blank Rome attorneys are witnesses to the criminal conduct charged in the Superseding Indictment. The Government submits this Reply Brief to make the following points:

- Blank Rome attorneys interacted with Defendant Radhakrishnan Karthik Nair ("Nair") and co-conspirator TECHNICAL SUPERINTENDENT 2 ("TS 2") during the charged criminal conduct. Those interactions included meetings in May of 2024 where Mr. Weigel gave Nair and TS 2 advance notice of the topics that they would likely be questioned about by the National Transportation Safety Board ("NTSB"). Those interactions also included dozens of emails with Nair and TS 2.

- Blank Rome did not respond to the Government's arguments as to the counsel-related defenses. This highlights the Government's concern that Blank Rome is not asserting certain defenses to avoid making themselves a witness.

- The Government timely raised the conflict-of-interest issue with defense counsel and with the Court.

## II. ANALYSIS

### A. Blank Rome attorneys are necessary witnesses because their interactions with Nair and TS 2 during the charged criminal conduct are relevant, admissible, and the evidence cannot be obtained from any other source.

#### *i. Blank Rome attorneys had relevant, admissible interactions with Nair and TS 2 during the charged conspiracy period.*

The Government argued in its Motion that multiple Blank Rome attorneys were potentially witnesses to the criminal conduct charged in the Superseding Indictment. Blank Rome's Opposition, and the Declarations submitted in support thereof, confirm that several lawyers are witnesses. To demonstrate the relevance of Blank Rome's interactions with Nair and TS 2, the Government has provided a timeline below that includes many of the known interactions between Blank Rome and Nair, and Blank Rome and TS 2. The Government has also included in the timeline certain events in the criminal case that are relevant. As the narratives below show, Blank Rome had multiple interactions with Nair and TS 2 that are relevant to proving the charges in the Superseding Indictment. These interactions increase the likelihood that the Government will call one or more of the attorneys discussed below as witnesses at trial.

- **March 26, 2024 – Allision involving the *M/V Dali* and the Francis Scott Key Bridge.**
- **May 14, 2024 – The NTSB published its Marine Investigation Preliminary Report. *See* Exhibit K.**[1]
- **May 28, 2024 – Mr. Weigel met with Nair virtually to prepare for his NTSB interview.**
- **May 29, 2024 – Mr. Weigel met with TS 2 virtually to prepare for his NTSB interview.**
- **May 29, 2024 – NTSB Engineering Group interviewed Nair.**
- **May 30, 2024 – NTSB Engineering Group interviewed TS 2.**

Mr. Weigel stated in his Declaration that he met with Nair via Microsoft Teams ("Teams") on May 28, 2024, to prepare for his interview with the NTSB. Weigel Decl. ¶ 19. According to Mr. Weigel, he told Nair to answer questions truthfully, and he "discussed some of the subjects likely to be addressed during the interview." *Id.* Mr. Weigel took two pages of handwritten notes during his meeting with Nair. *Id.* Mr. Weigel identified a similar encounter with TS 2 the following day. *Id.* at 20.

Mr. Weigel's interactions with Nair and TS 2 are admissible evidence. Mr. Weigel gave Nair and TS 2 advance notice of the topics that they would likely be questioned about. Based on the information known at the time, including the NTSB's Preliminary Report, the Government expects that the topics may have included the fuel supply system, the flushing pump, and the electrical system. At trial, the Government bears the burden of proving that Nair and TS 2 acted knowingly and willfully. To prove that Nair and TS 2 acted knowingly, the Government must prove that they acted intentionally and voluntarily, "and not because of ignorance, mistake,

[1] This Exhibit was attached to the Government's Motion, and any new exhibits attached hereto will be sequential to the Government's previously-filed exhibits.

accident, or carelessness." Sand, Siffert, *et al.*, *Modern Fed. Jury Instructions,* Instruction No. 3A-1. To prove that they acted willfully, the Government must prove that their actions were not due to "negligence, inadvertence, or mistake." *Id.*, Instruction No. 3A-3. The Government can argue that Nair and TS 2 were not acting because of ignorance, mistake, accident, carelessness, negligence, or inadvertence because Mr. Weigel had already discussed with them the topics that they would be questioned about, and Nair and TS 2 had time to plan their answers. As explained in the Government's Motion, calling Mr. Weigel or any Blank Rome attorney as a witness to testify against their client would result in the disqualification of the entire firm. ECF No. 75 at 28-30.

Blank Rome's June 26, 2026, letter to the Government stated that Blank Rome attorneys also substantively interviewed Nair and TS 2 prior to their NTSB interviews. Mr. Bennett's Declaration, however, states that Blank Rome has "discovered that this statement is not entirely accurate," and that those meetings did not occur. Bennett Decl. ¶ 29.

- **June 6, 2024 – Synergy provided false circuit breaker inspection certificates for the *M/V Dali* to the NTSB. Superseding Indictment, ECF No. 50 at 34.**

- **June 20, 2024 – Mr. Weigel and Blank Rome attorney Thomas Belknap ("Mr. Belknap") met with Nair in Chennai, India.**

- **October 18, 2024 – Synergy provided false circuit breaker inspection certificates for the *M/V Dali* to the grand jury. ECF No. 50 at 35.**

Two weeks after Synergy provided the NTSB with false inspection certificates on June 6, 2024, Mr. Weigel traveled to India and Singapore to, among other things, gather documents requested by the NTSB. Weigel Decl. ¶ 29. During this trip, Mr. Weigel and Mr. Belknap met with Nair in Chennai, India, on June 20th. Both attorneys took notes of their meeting with Nair, and they also created a Memorandum of their meeting. *Id.* Mr. Weigel's Declaration does not discuss the purpose of the interview, the length of the interview, or the topics discussed during the interview. In other paragraphs in his Declaration discussing other meetings, Mr. Weigel stated he

"did not substantively interview" Nair or TS 2. Weigel Decl. ¶¶ 19, 20. He did not provide such a disclaimer for the meeting in Chennai. And although the meeting occurred after the false electrical certificates had already been supplied to the NTSB, those electrical certificates were later supplied to the grand jury in October.

Nair is charged in Counts Twelve, Fourteen, and Fifteen with providing false electrical certificates to the NTSB and to the grand jury. ECF No. 50 at 41-42. Mr. Weigel and Mr. Belknap traveled to India to gather documents, and their meeting with Nair was significant enough that both attorneys took notes during the meeting and wrote a memorandum following the meeting. The NTSB investigation and the criminal investigation relate to the same basic facts, and so statements by Nair to Mr. Weigel and Mr. Belknap are likely relevant to the criminal case.

- **January 23, 2025 – Five Blank Rome attorneys interviewed Nair.**

On January 23, 2025, five Blank Rome attorneys – Mr. Weigel, Joseph Poluka ("Mr. Poluka"), Luke Reid ("Mr. Reid"), Kierstan Carlson ("Ms. Carlson"), and Alexandra Clark ("Ms. Clark") – interviewed Nair. Weigel Decl. ¶ 31. Mr. Poluka, Mr. Reid, Ms. Carlson, and Ms. Clark are all counsel of record in the criminal case. According to Mr. Weigel, Ms. Clark and Ms. Carlson took notes of the meeting. *Id.* Mr. Weigel's Declaration does not explain the purpose of the meeting, the length of the meeting, the length of the notes that were taken, or the subjects discussed at the meeting. *Id.* Given that the attendees included five Blank Rome attorneys, in-house counsel for Synergy, and a "high level, non-lawyer representative" of Synergy, the meeting appears to have been of significance. *Id.* Based on the Government's experience working with Blank Rome and Mr. Poluka, specifically, the Government believes that the substance of the meeting included facts relevant to the criminal investigation.

Here, Mr. Weigel's declaration explains that four attorneys who are counsel of record in the criminal case participated in a meeting with Nair on January 23, 2025. Most of Synergy's criminal liability is vicarious through Nair, and Synergy's trial attorneys personally engaged with Nair during the period charged in the Superseding Indictment. Nair's statements during this interview are relevant to prove his intent to engage in the coverup charged in the Superseding Indictment. This meeting also enhances the Government's concern regarding counsel functioning as an unsworn witness, as the Government explained in its opening Motion. Motion, pp. 13-14, 16-19.

- **January 30, 2025 – Mr. Weigel, Mr. Belknap, and Mr. Bennett met with Nair in Chennai, India to prepare for his deposition.**

One week after several members of the criminal team from Blank Rome interviewed Nair, on January 30, 2025, Mr. Weigel met with Nair in Chennai along with Mr. Belknap and Mr. Bennett. *Id.* ¶ 32. The meeting related to Nair's deposition that was to occur in the Limitation of Liability Action. *Id.* The subject matter of the Limitation of Liability Action overlaps with the subject matter of this criminal prosecution. Some of the theories pursued in that case, including the issue of the flushing pump, are nearly identical to those in the criminal prosecution. Any information provided to Nair or any statements made by Nair are relevant to prove his intent. Further, Mr. Bennett is counsel of record in the criminal case, which enhances the Government's concern about the risk of counsel's unsworn testimony.

- **March 21, 2025 – Ms. Carlson and Mr. Reid had a Teams call with TS 2. Bennett Decl. ¶ 56.**

- **March 23, 2025 – Synergy provided false circuit breaker inspection certificates for the *M/V Maersk Saltoro* and the *M/V Cezanne* to the grand jury.**

Overt Acts alleged in furtherance of the charged conspiracy include Synergy's provision of false inspection certificates for the M*/V Maersk Saltoro* and the *M/V Cezanne* to the grand jury.

ECF 50 at ¶¶ 123.dd. and 123.ee. According to Mr. Bennett's Declaration, Ms. Carlson and Mr. Reid met with TS 2 on March 21, 2025, but they did not take any notes of the meeting. Bennett Decl. ¶ 56. Mr. Bennett did not attend the meeting, and Ms. Carlson and Mr. Reid did not provide declarations. Mr. Bennett did not provide the purpose, duration, or substance of the meeting. Two days after this meeting, Blank Rome, on behalf of Synergy, produced false electrical inspections certificates for the two vessels that TS 2 managed, the *M/V Maersk Saltoro* and the *M/V Cezanne*. ECF No. 50 at 35. The sequence suggests that Ms. Carlson and Mr. Reid have first-hand knowledge of evidence relevant to the charged conspiracy and false document counts, which increases the likelihood that they could be witnesses at trial. They are also counsel of record in the criminal case, which enhances the Government's concern regarding the risk that counsel may function as unsworn witnesses.

- **May 20, 2025 – Ms. Carlson and Ms. Clark met with Nair on Teams.**

According to Mr. Bennett, Ms. Carlson and Ms. Clark met with Nair through Teams on May 20, 2025. Bennett Decl. ¶ 52. Mr. Bennett did not attend this meeting and Ms. Carlson and Ms. Clark did not provide declarations. Mr. Bennett did not explain the purpose or duration of the meeting. Blank Rome attorneys took notes during most of their meetings with Nair and TS 2, but neither Ms. Carlson nor Ms. Clark took notes during this meeting. This meeting is also significant to the Government because it was the last time Blank Rome attorneys met directly with Nair. Blank Rome attorneys met with Nair in January 2025 to prepare for his deposition in the Limitation of Liability Action, and Ms. Carlson and Ms. Clark met with Nair on May 20, 2025. The civil litigants deposed Nair on June 23, 2025, where Nair was represented by separate counsel. *See* June 23, 2025 Nair Dep. Tr. at 14, attached in relevant part as Exhibit L. A subsequent interaction between Blank Rome and Nair also occurred with Nair's separate counsel. Bennett Decl. ¶ 53. At

some point after the May 20, 2025 interview but before Nair's June 23, 2025 deposition, Blank Rome decided that Nair needed separate representation. This timeline suggests that Nair may have made inculpatory statements during his May 20, 2025 meeting with Ms. Carlson and Ms. Clark, and Blank Rome determined that Nair needed outside representation.

Additionally, both Ms. Carlson and Ms. Clark are counsel of record in the criminal case. Their interactions with Nair are relevant, and any interactions by current trial counsel with Nair during the charged conspiracy creates the potential for counsel to act as unsworn witnesses or the need to call one or both of these attorneys as witnesses at trial.

- **June 20, 2025 – Mr. Bennett, Mr. Belknap, and Ms. Carlson met with TS 2 to prepare for his deposition in the Limitation of Liability Action. Bennett Decl. ¶ 57.**

- **June 25–26, 2025 – Mr. Bennett, Mr. Belknap, and two other Blank Rome attorneys, Noe Hamra and Neil McMillan, met with TS 2 in London to prepare for his deposition in the Limitation of Liability Action. Bennett Decl. ¶ 47.**

- **June 27, 2025 – TS 2 was deposed in the Limitation of Liability Action.**

During his deposition in the Limitation of Liability Action, TS 2 affirmed his prior statement to the NTSB that he did not know that the *M/V Maersk Saltoro* and *M/V Cezanne* used the flushing pump as a continuous fuel supply source. Exhibit J at 151. TS 2 was also confronted with the August 28, 2023, email that he received reporting successive blackouts on the *M/V Maersk Saltoro* in December of 2022. *Id.* at 167. During the questioning about the successive blackouts on the *M/V Maersk Saltoro*, TS 2 initially denied that the second blackout referenced in the email was caused by the flushing pump. *See* June 27, 2025, TS 2 Dep. Tr. at 171, attached in relevant part as Exhibit M ("Q. And the second blackout was caused by use of the flushing pump; right? A. The second blackout was – it's not like that. In one line if you read, you can interpret that way, but it's not like that."). After seven pages of cross-examination, TS 2 admitted that the second

blackout in December of 2022 was caused by the reliance on the flushing pump. *Id.* at 177-78 ("Q. . . . And then – and then they started No. 3 [generator] but then it stopped and it stopped because of the flushing pump; right? A. Yes.").

TS 2's deposition testimony is relevant, admissible evidence in support of the Government's case. Synergy's historic knowledge of the risk associated with the flushing pump is critical to the Government's case, and when TS 2 was confronted with the fact that he knew more than one year before the allision that the flushing pump could lead to a dual blackout, he struggled to explain himself. Five Blank Rome attorneys prepared him for that deposition, where they likely discussed the dual blackout on the *M/V Maersk Saltoro* in 2022. TS 2 stated that he had seen the August 23, 2023, email "recently." Ex. J at 167. Information provided to TS 2 during his three-days of meetings with Blank Rome attorneys, or any statements made by TS 2 during those meetings, are relevant to his intent during the deposition and during the charged conspiracy. The fact that two of Synergy's current trial counsel prepared him for the deposition also increases the risk that they will function as unsworn witnesses about the deposition.

*ii. Blank Rome attorneys had extensive electronic communication with Nair and TS 2.*

[redacted]

[redacted]

The primary case cited by Synergy is *United States v. Perry*, 30 F. Supp. 3d 514 (E.D. Va. 2014). In *Perry*, the defendant was charged with health care offenses. *Id.* at 520. The government moved to disqualify the defendant's counsel because defense counsel, on behalf of Perry, filed a

[redacted]

criminal complaint against some of Perry's former employees. *Id.* at 521. The government argued that this was witness tampering, and the government sought to introduce that evidence of the criminal complaint using defense counsel as a witness. *Id.* at 525-26.

The court denied the government's motion. The court found that because the testimony sought was tangential in nature, because the testimony was related to conduct that post-dated the charged conduct. *Id.* at 541. The court emphasized that the relevant event involving defense counsel occurred "*more than a year after* the end of the criminal conduct." *Id.* at 542 (emphasis in original). The court also stated that the government had other evidence that the defendant tried to implicate his former employees and did not need to rely on defense counsel to make that point. *Id.* at 546.

Here, unlike *Perry*, Blank Rome's contacts with Nair and TS 2 occurred during the criminal conduct. Here, also unlike *Perry*, the Government does not have another source to provide the same or similar evidence. Blank Rome attorneys had sustained, direct contact with Nair and TS 2 during the charged criminal conspiracy, including the day before each of them testified in front the NTSB. Synergy's argument that Blank Rome attorneys are not necessary witnesses because the Government obtained Nair's telephone records is unpersuasive.

**B. Blank Rome did not respond to the Government's arguments about counsel-related defenses.**

In its Motion, the Government noted that defendants often use the involvement of counsel as part of their defense strategy. *See* ECF No. 75 at 14-15, 22-23. Defendants can assert the advice-of-counsel defense or use the presence of counsel to argue against the requisite intent. *Id.* The Government noted that Synergy should be able to argue that its hiring of the Blank Rome law firm and the efforts of those attorneys are evidence that Synergy did not obstruct or engage in a cover-up, as charged in the Superseding Indictment. *Id.* at 22-23. The Government highlighted

cases where the court noted that the defendant would be better served with the attorney acting as a witness. *Id.*

Synergy did not respond to this argument. Synergy's failure to state whether it can, will, or should assert counsel-related defenses shows that its representation is being impacted by Blank Rome's status as a witness. This is also a key distinguishing fact from the *Perry* case. In *Perry*, the court noted that there was "no true advice of counsel defense" because the attorney's involvement occurred more than one year after the charged criminal activity. *Perry*, 30 F. Supp. 3d at 541-42. Here, Blank Rome's representation coincided with the conspiracy charge, the obstruction charges, and the false document charges. Synergy may allege counsel-related defenses, if it is not prevented from doing so.

**C. The Government timely raised the conflict-of-interest issue with defense counsel and with the Court.**

Synergy contends that the Government failed to timely raise the conflict-of-interest issue, and that its delay should constitute a waiver. The charges in this case were unsealed on May 12, 2026. Blank Rome attorneys entered their appearance as defense counsel on May 19 and 20, 2026. The Government notified defense counsel of the potential conflict by telephone on June 11, 2026, before the first scheduling conference. The Government notified the Court of the potential conflict at the scheduling conference on June 16, 2026. The Government sent its letter to defense counsel, detailing its position, later that day. Blank Rome provided its response on June 26, 2026. Counsel for the parties discussed the issue during a video conference on July 1, 2026, and on a phone call later that day. The Government filed its Motion on August 13, 2026, and the Motion will be fully briefed more than one year before trial is scheduled to begin in October of 2027. The Government notified Synergy and Blank Rome of this issue in a timely manner.

Synergy contends that the Government should have notified it prior to seeking charges. ECF No. 88-1 at 28-29. The conflict of interest at issue here is a trial issue, and until the grand jury returned an indictment that included post-allision charges and allegations, the issue was not ripe. The Government also had no remedy to address the conflict of interest until after charges were filed. Finally, in some cases, typically drug conspiracies, the Government is in exclusive possession of the facts that demonstrate the conflict of interest. Here, the facts giving rise to the conflict were known to Synergy and Blank Rome prior to the unsealing of the charges.

The case cited by Synergy does not help its cause. In *United States v. Bryant-Taylor*, 2025 WL 1508063 (W.D. Va. May 27, 2025), a defendant moved to disqualify counsel for a co-defendant. The district court criticized the defendant for waiting sixteen months after counsel for the co-defendant entered their appearance to file the motion. *Id.* at 1, 4-5. The Government filed its Motion less than three months after counsel entered their appearance, and the Government notified all parties of the potential conflict even earlier.

Further, the law does not support the existence of any waiver in this context. The civil cases cited by Synergy related to a potential waiver do not involve the Sixth Amendment considerations present here.

**D. Synergy's remaining arguments are not persuasive.**

*i. The Government is entitled to correspondence and fact work product related to Blank Rome's interactions with Nair and TS 2.*

The Government argued in its Motion that it could subpoena Blank Rome's correspondence with Nair and TS 2 and obtain any fact work-product from Blank Rome regarding their interactions with Nair and TS 2. ECF No. 75 at 20. Blank Rome focuses its argument on protecting its opinion work product. ECF No. 88-1 at 22-25. Based on the current record, the Government does not intend to seek Blank Rome's opinion work product. The Government acknowledges that the

Fourth Circuit has defined opinion work product broadly in cases such as *In re Grand Jury Subpoena* (Grand Jury Subpoena 2017), 870 F.3d 312, 317 (4th Cir. 2017). But even in *In re Grand Jury Subpoena*, the Fourth Circuit found that the crime-fraud exception applied and that the government was permitted to question the attorney about fact work product. *Id.* at 319-20.

*ii. Synergy has the time and resources to hire another firm.*

Synergy argues that it would be prejudicial for it to obtain new representation. The Government agrees that this matter is large and complex, but trial is still more than one year away. The declarations Mr. Bennett and Mr. Weigel demonstrate that Synergy has ample resources to hire another law firm.

*iii. The Government remains concerned that Mr. Weigel previously acted as an attorney for Nair and TS 2 during their NTSB interviews.*

The Government argued that Blank Rome may have a conflict of interest arising out of their prior representation of Nair and TS 2. Blank Rome responded by claiming that they never represented Nair or TS 2, and that Mr. Weigel only acted as their "representative" as that term is defined by NTSB regulations. The relevant NTSB regulation states as follows:

> § 831.7 Representation during an interview.
>
> (a) Any person interviewed in any manner by the NTSB has the right to be accompanied during the interview by no more than one representative of the witness's choosing. The representative—
>
> (1) May be an attorney;
> (2) May provide support and counsel to the witness;
> (3) May not supplement the witness's testimony; and
> (4) May not advocate for the interests of a witness's other affiliations (e.g., the witnesses employer).

49 C.F.R. § 831.7. The NTSB regulation is similar to the description of the role of an attorney at a deposition. Mr. Weigel met with Nair and TS 2 prior to their interviews, he told them to tell the

truth, he told them what they could expect to be asked, he attended the interviews with them, and he was prohibited from advocating for their employer.

## III. CONCLUSION

For the foregoing reasons, the Court should hold a hearing on this matter and take any steps necessary, including disqualification, to ensure that Synergy's representation is consistent with the Sixth Amendment and the relevant ethics rules.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: _________/s/___________
Matthew P. Phelps, No. 17933
Bijon A. Mostoufi, No. 816580
Kimberly S. Phillips, No. 811611
Assistant United States Attorneys
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
matthew.phelps@usdoj.gov
bijon.mostoufi@usdoj.gov
kimberly.phillips@usdoj.gov

Adam R. F. Gustafson
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division

By: _________/s/___________
Leigh P. Rendé
(PA Bar No. 203452)
United States Department of Justice
Environmental Crimes Section
150 M Street, NE
Washington, D.C. 20002
(202) 532-3344
leigh.rende@usdoj.gov

COUNSEL FOR THE UNITED STATES